IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MARY J. CINELLI | : | CIVIL ACTION NO. **1:CV-04-2108** |
| Plaintiff | : | (Judge Conner) |
| v. | : | (Magistrate Judge Blewitt) |
| JOANNE B. BARNHART, Commissioner of Social Security, | : | |
| Defendant | : | |

**REPORT AND RECOMMENDATION**

This is a Social Security disability case pursuant to 42 U.S.C. § 405(g) and 1383 (c)(3). The Plaintiff, Mary J. Cinelli, is seeking review of the decision of the Commissioner of Social Security ("Commissioner") which denied her claim for supplemental security income (SSI) under Title XVI of the Social Security Act ("Act"), 42 U.S.C. §§ 1381-1383.

**I.  PROCEDURAL HISTORY.**

The Plaintiff filed an application for SSI on March 7, 2003, alleging an inability to work due to chronic cervical spine syndrome, fibromyalgia, colitis and migraines. (R. 64). Her claim was initially denied, and a hearing was held before an Administrative Law Judge ("ALJ") on May 25, 2004. (R. 249-272). An impartial Vocational Expert ("VE"), as well as the Plaintiff, who was represented by counsel, testified at the hearing.

The ALJ denied Plaintiff's applications on June 21, 2004. (R. 12-19). The Plaintiff requested review of the ALJ's Decision to the Appeals Council. (R. 7). The Appeals Council denied Plaintiff's request for review (R. 4-6), thus making the ALJ's Decision the final decision of the Commissioner.

42 U.S.C. § 405(g) and 1383 (c)(3).  That decision is the subject of this appeal. The Plaintiff filed her complaint against the Commissioner on September 22, 2004. (Doc. 1). On November 29, 2004, the Commissioner filed a voluntary order to remand pursuant to the 6th sentence of 42 U.S.C. § 405(g) in order to complete the administrative record. (Doc. 11). This Court granted the Commissioner's request, and the complete record was filed on February 3, 2005.  In compliance with the Procedural Order issued in this matter, the parties have filed briefs in support of their respective positions.  (Docs. 20, 21).

## II. STANDARD OF REVIEW.

When reviewing the denial of SSI benefits, we must determine whether the denial is supported by substantial evidence.  *Brown v. Bowen*, 845 F.2d 1211, 1213 (3rd Cir. 1988); *Mason v. Shalala*, 994 F.2d 1058 (3rd Cir. 1993).  This court may not undertake a *de novo* review of the Commissioner's decision and should not re-weigh the evidence of the record. *See  Monsour Medical Center v. Heckler*, 806 F. 2d 1185, 1190 (3d Cir. 1986). If the Commissioner's decision is supported by substantial evidence, it must be affirmed. *See* 42 U.S.C. § 405(g). Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pierce v. Underwood*, 487 U.S. 552 (1988); *Hartranft v. Apfel*, 181 F.3d 358, 360. (3d Cir. 1999). It is less than a preponderance of the evidence but more than a mere scintilla. *Richardson v. Perales*, 402 U.S. 389, 401 (1971).

To receive disability benefits, the Plaintiff must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 432(d)(1)(A).  Furthermore,

> [a]n individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.  For purposes of the preceding sentence (with respect to any individual), "work which exists in the national economy" means work which exists in significant numbers either in the region where such individual lives or in several regions of the country.

42 U.S.C. § 423(d)(2)(A).

## III. ELIGIBILITY EVALUATION PROCESS.

A five-step evaluation process is used to determine if a person is eligible for disability benefits.  *See* 20 C.F.R. § 404.1520 (1990).  *See also Plummer v. Apfel*, 186 F.3d 422, 428 (3d Cir. 1999).  If the Commissioner finds that a Plaintiff is disabled or not disabled at any point in the sequence, review does not proceed any further.  20 C.F.R. §§ 404.1520, 416.920 (2003).

The first step of the process requires the Plaintiff to establish that she has not engaged in "substantial gainful activity."  *See* C.F.R. §§ 404.1520(b), 416.920(b). The second step involves an

evaluation of whether the Plaintiff has a severe impairment. *See* 20 C.F.R. §§ 404.1520(c), 416.920(c). The Commissioner must then determine whether the Plaintiff's impairment or combination of impairments meets or equals those listed in Appendix 1, Subpart P, Regulation No. 4.

If it is determined that the Plaintiff's impairment does not meet or equal a listed impairment, the Commissioner must continue with the sequential evaluation process and consider whether the Plaintiff establishes that she is unable to perform her past relevant work. *See* 20 C.F.R. § 404.1520(e), 416.920(e). The Plaintiff bears the burden of demonstrating an inability to return to her past relevant work. *Plummer*, 186 F.3d at 428. Then the burden of proceeding shifts to the Commissioner to demonstrate that other jobs exist in significant numbers in the national economy that the Plaintiff is able to perform, consistent with her medically determinable impairments, functional limitations, age, education and past work experience. 20 C.F.R. §§ 404.1520(f), 416.920(f). This is step five, and at this step, the Commissioner is to consider the Plaintiff's stated vocational factors. *Id*.

The ALJ concluded that the Plaintiff is not disabled within the meaning of the Social Security Act. ( R. 19). In reaching this determination, the ALJ first found that Plaintiff had not engaged in substantial gainful work activity since her alleged onset date (March 7, 2003). (R. 18, ¶ 1). Further, the ALJ determined that the medical evidence established that Plaintiff's impairments, namely, fibromyalgia, endometriosis, a history of whiplash injury, a history of thoracic syndrome and a history of depression, were severe within the meaning of the Regulations at 20 C.F.R.

§§ 404.1520(b) and 416-.920(b), ( R. 18, ¶ 2), but not severe enough to meet or equal the criteria for establishing disability under the listed impairments as set forth in Appendix 1, Subpart P, Regulations No. 4.  (R. 18, ¶ 3).

The ALJ found that Plaintiff's allegations regarding her limitations are not fully credible. ( R. 17). When assessing Plaintiff's Residual Functional Capacity ("RFC"), the ALJ found that the Plaintiff retains the RFC to perform light work,[1] which includes sedentary work[2]. (R. 18, ¶ 4). The ALJ found that the Plaintiff's limitations should not prevent her from performing the jobs enumerated by the VE. (R. 19, ¶ 6).  The ALJ concluded that the Plaintiff was able to perform a significant number of acceptable jobs existing in the national economy.  (R. 19, ¶ 7).  Thus, the Plaintiff was found not to be disabled. (R. 19 , ¶ 9 ).  After careful review of the record, we conclude that the ALJ's decision is supported by substantial evidence.

---

[1] Light work. Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.
*20 C.F.R. 416.967(b)*.

[2] Sedentary work. Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.
*20 C.F.R. 416.967(a)*.

The relevant time period for this case is from March 7, 2003 (date of SSI application) through June 21, 2004 (date of the ALJ decision).

## IV. DISCUSSION.

This appeal involves the denial of Plaintiff's application for SSI.  The issue in this case is whether the Commissioner's decision that Plaintiff is not disabled within the meaning of the regulations and is able to perform light work is supported by substantial evidence.

Essentially, the Plaintiff argues that the ALJ failed to give "special significance" to the opinion of her treating physician. (Doc. 20, p. 9).   In addition, Plaintiff argues that the ALJ failed to properly address her testimony regarding her daily activities. (Doc. 20, p. 12). Finally, Plaintiff argues that the ALJ failed to consider her impairments in combination in the hypothetical question posed to the VE. (Doc. 20, p. 13).

### A. *Background*

The Plaintiff was born on April 28, 1970, and was thirty-four (34) years old at the time of the hearing before the ALJ. Thus, the Plaintiff was a younger person under the regulations.  *See* 20 C.F.R. §§ 404.1563(c), 416.963(c). The evidence of record shows that the Plaintiff was involved in a motor vehicle accident in 1988 at the age of 18, as a result of which she suffered a whiplash injury.(R. 58, 64, 93).  The present case is the Plaintiff's fourth application for benefits. Her first application for SSI was denied in 1990 by a an ALJ decision; she was alleging an inability to work since 1988. Both the second and third applications were denied as well. (R. 12).  Plaintiff has a twelfth grade education and completed a food preparation course at a vocational school.  (R. 254).

Plaintiff's past work experience is brief and sporadic and includes work as part-time store clerk and pizza maker. (R. 254). The Plaintiff is separated from her husband and has three children ages nine, five and two. (R. 255). She is the primary care giver for her children.

## B. Medical Evidence

As stated above, Plaintiff alleges an inability to work since March 7, 2003, due to chronic cervical spine syndrome, fibromyalgia, colitis and migraines. (R. 64). In assessing Plaintiff's complains, the ALJ noted that Plaintiff complained of neck pain and muscle spasms due to fibromyalgia. (R. 17). However, the ALJ determined that none of Plaintiff's impairments were of sufficient severity to meet or medically equal a listed impairment. ( R. 18 ¶ 3).

An MRI of her cervical spine and an EMG and nerve conduction study of the upper extremities were performed after the 1988 motor vehicle accident and the results were normal. (R. 91, 93). On November 11, 1994, Stephen J. Annest, M.D., examined the Plaintiff, who reported a past history of colitis, endometriosis, and a hernia. She also complained of pain in her neck and arms. (R. 108). Dr. Annest diagnosed the Plaintiff with bilateral thoracic outlet syndrome. (R. 109).

On November 22, 1994, the Plaintiff underwent a left thoracic outlet release surgery. (R. 88, 94-107). On January 17, 1995, she reported that the surgery resulted in "excellent" relief of her symptoms. (R. 124). She underwent a right thoracic release procedure on the same date. (R. 119-31). Dr. Amherst reported that the Plaintiff had a past history of chronic C-spine pain syndrome, colitis, hiatal hernia, bilateral thoracic outlet syndrome, and endometriosis. (R. 119).

In January 1998, Joseph Cama, M.D., examined the Plaintiff and indicated that she had fibromyalgia and endometriosis. (R. 142). The Plaintiff underwent a laparoscopic excision for her pelvic endometriosis. (R.132-35). On March 9, 1998, Dr. Cama reported that the Plaintiff complained of neck and back aches but was otherwise healthy. (R 141). On May 14, 1998, Dr. Cama reported that the Plaintiff was "feeling much better" and had good range of motion in her neck. (R. 141).

In February 2000, the Plaintiff suffered a miscarriage (R. 153-157). At some point during her treatment, the Plaintiff was taking Amitriptyline for depression. Dr. Cama changed her medication to Prozac on May 1, 2000. (R. 138).

In late 2001, the Plaintiff gave birth to her third child by cesarean section. (R.160). In September 2002, the Plaintiff visited Ronald Black, M.D., her obstetrician, for a routine annual consultation. She was attempting to get pregnant again and was interested in herbal medications for her fibromyalgia since regular medications did not provide any relief of her symptoms. (R. 175-76). On February 11, 2003, the Plaintiff told Dr. Black that she was under "a lot more stress recently" because she was going through a divorce. (R. 174). Dr. Black prescribed the antidepressant Zoloft. (R. 174).

On February 20, 2003, Raymond Perry, M.D., examined the Plaintiff, who complained of fever and a stuffy nose. (R.171-172). She was well-appearing, well-nourished, and in no distress. She had normal range of motion in all extremities and normal gait, strength, and sensation. (R. 172).

8

In March 2003, Dr. Black performed a surgical sterilization procedure at the Plaintiff's request. (R. 237-38). Dr. Black reported that the Plaintiff had a history of two normal deliveries, one cesarean section and one miscarriage. Both preoperative and postoperative examinations were normal, and the Plaintiff was released with instructions not to operate a motor vehicle for forty-eight hours and that she could return to work the following week. (R. 173, 232).

On April 21, 2003, a state agency physician completed a Psychiatric Review Technique Form (PRTF) finding that the Plaintiff did not have a severe mental impairment but had instead only mild limitations in performing activities of daily living, functioning in a social setting, and maintaining concentration, persistence, or pace. (R. 180-194). This physician noted that the Plaintiff had never received psychiatric treatment or counseling and was using antidepressants for her fibromyalgia rather than for any psychiatric problem. (R. 194).

On April 29, 2003, a state agency consultant completed a residual functional capacity (RFC) assessment. (R. 195-202). The consultant opined that the Plaintiff could lift and/or carry twenty pounds occasionally and ten pounds frequently, stand and/or walk for six hours of an eight-hour workday, sit for six hours of an eight-hour workday, and push/pull without limitation. (R. 196).

On an October 8, 2003, assessment form, Dr. Cama diagnosed bronchitis and advised the Plaintiff to stop smoking. (R. 210). Dr. Cama opined that the Plaintiff could not perform even sedentary work as a result of spinal spasms and a slow walk with a limp. (R 234-236). Dr. Cama opined that the Plaintiff could stand/walk and/or sit for no more than one hour in an eight-hour work day, and could sit for no more than three hours. The physician also opined that the Plaintiff

can alternate between sitting and standing position for four hours but needs to rest for at least four hours in an eight-hour work day. Dr. Cama further opined that the Plaintiff can lift/carry one to five pounds occasionally and has moderate limitations in dealing with stress in a competitive work setting. (R. 234-235).

On November 18, 2003, Dr. Cama wrote a letter stating that he had treated the Plaintiff in the past for fibromyalgia and depression.  He stated that he "feels" that the Plaintiff was "significantly handicapped" by her fibromyalgia and depression. However, her treatment only consisted of antidepressants and "pain medications for her aches and pains." Dr. Cama further explained that he moved his practice to another clinic and the Plaintiff moved her records to continue her care with him. He stated that during his last three examinations, he had assessed nothing other than complaints of back strain, "problems related to fibromyalgia," and one episode of bronchitis. (R 207).

At the administrative hearing on May 25, 2004, the Plaintiff testified that the primary reason why she could not work was pain in her neck and dizziness. (R. 255, 257). Her medication regime consisted of Ibuprofen and Darvocet for pain and the muscle relaxer Skelatin. (R. 265). The Plaintiff complained of constant neck pain as a result of a motor vehicle accident in 1988.  She stated that she was diagnosed with fibromyalgia in 1996 and her symptoms include muscle spasms and weakness. (R. 262). She acknowledged that the thoracic release surgery relieved her migraines headaches which she now gets only when she is under stress. (R. 263).

The Plaintiff stated that the only symptom of her endometriosis is abdominal pain and her colitis causes her stomach pain. She also complained of stomach pain due to a hiatal hernia and

acid reflux. (R. 264). She stated that all of these are minor pains that she is able to deal with and they are "just annoying." She reiterated that her main complaint was her neck pain. (R. 265).

The Plaintiff testified that on a typical day, she cooks on her wood stove and cares for her children. She gets up at 6:30 a.m. and helps her nine-year old daughter get ready for school. She then goes back to bed until 9:00 a.m. when her two younger children get up. (R. 257). She usually cooks breakfast and then lays down again or sits while her children watch television. She prepares lunch, does the dishes, performs light house cleaning and then takes an afternoon nap with her children. (R. 258). She mows her lawn in a riding tractor once a week, and her hobby consists of spending time on her personal computer, which causes her neck pain. The Plaintiff also testified that she can drive and has a valid driver's licence although she needs to register and insure her car. (R. 259).

## C. *Vocational Expert.*

In response to a hypothetical question involving a person of Plaintiff's age, education, and work experience, the VE opined that such person could perform a range of light work (R. 267-268). Based on the Plaintiff's vocational profile and the aforementioned limitations, the VE identified numerous light jobs that she could perform, such as inspector, hand packer, and order filler (R. 268).

In his decision, the ALJ found that the Plaintiff had fibromyalgia, endometriosis, a history of whiplash syndrome, a history of thoracic outlet syndrome, and a history of depression, impairments that were severe, but that did not meet or equal the requirements of any of the listed impairments (R. 18). Finally, after taking into consideration Plaintiff's residual functional capacity ("RFC"), the ALJ

found that Plaintiff had the RFC to engage in a significant range of light work. (R. 18, ¶ 4). Thus, the Plaintiff was found not disabled. (R. 19, ¶ 9).

## *D. Analysis*

As stated above, the Plaintiff argues that the ALJ erroneously rejected Dr. Cama's RFC assessment and failed to give "special significance" to his opinion in his capacity as her treating physician. (Doc. 20, p. 9). In support of her argument, the Plaintiff cites Dr. Cama's treatment notes documenting the Plaintiff's complaints of neck pain and his 1996 diagnosis of migraine headaches. (Doc. 20, p. 10). The Plaintiff also refers to Dr. Cama's diagnoses of colitis, chronic abdominal pain, chronic pain in the cervical spine, depression, insomnia and hiatal hernia, as well as subsequent diagnoses of fibromyalgia and endometriosis. (Doc. 20, p. 10).

It is granted that Third Circuit case law, as well as the Commissioner's, regulations provide that the opinion of treating physicians must be given great weight. See 20 C.F.R. § 416.927(d) (2); *see also Morales v. Apfel*, 225 F. 3d 310 (3$^d$ Cir. 2000). However, in order to be entitled to controlling weight, a treating physician's opinion must be supported by clinical and laboratory diagnostic tests. *See* 20 C.F.R. § 416.927(d) (2), (3). (Doc. 21, p. 9).

In rejecting Dr. Cama's RFC opinion, the ALJ explained that the severe restrictions attributed to the Plaintiff are inconsistent with the objective medical evidence of record. (R. 16). The ALJ further explained that the Plaintiff had undergone a sterilization procedure, a lysis of adhesions and a cautery of endometriosis on April 10, 2003. There were no complications related to these procedures, and the Plaintiff was released on the same day with authorization to return to school

or work in three days. (R. 16). The ALJ concluded that Dr. Cama's opinion is contradicted by his own treatment notes, which only reveal a history of minor aches and pains. (R. 16).

The Plaintiff advances a generic argument regarding the ALJ's rejection of Dr. Cama's opinion but fails to cite any portion of the record which would justify reversal of the ALJ's decision. Careful review of the record failed to reveal any diagnostic test that would support Dr. Cama's RFC assessment. Although the Plaintiff has been diagnosed with several medical conditions throughout the years, there is no indication that any of those conditions render her permanently disabled.

The law is clear that the existence of a medical condition alone does not demonstrate a disability for purposes of the Act.  The issue is not  whether a medical condition exists, but whether it results in a functional disability that prevents the Plaintiff from performing substantial gainful activity. *See Petition of Sullivan*, 904 F. 2d 826, 845 (3d Cir. 1990).

In assessing the Plaintiff's RFC, the ALJ discounted the Plaintiff's testimony regarding the severity of her symptoms because they are not fully credible and are inconsistent with the objective medical evidence. (R. 17).  The Plaintiff argues that the ALJ improperly used her testimony regarding her daily activities as a basis to discredit the Plaintiff's testimony regarding the severity of her symptoms. (Doc. 20, p. 12).  Although an ALJ may not support a non-disability finding solely on an individual's ability to perform household duties, the regulations allow an ALJ to consider a person's daily activities as a factor to determine whether the person's subjective symptoms are severe enough to impede her capacity to perform gainful activity. 20 C.F.R. § 416.929 (c) (3). (Doc. 21, p. 13).

An ALJ is given great discretion regarding credibility determinations. *Van Horn v. Schweiker*, 717 F. 2d 871, 873 (3d. Cir. 1983). A court should affirm an ALJ's credibility finding unless the Plaintiff can demonstrate that the ALJ was patently wrong. *Herr v. Sullivan*, 912 F.2d. 178, 182 (7th Cir. 1990). To provide additional support to his credibility determination, the ALJ explained that at the hearing, the Plaintiff had the appearance of a "young, healthy woman" who did not exhibit signs of pain and who did not appear tired or fatigued. The ALJ further noted that the Plaintiff did not "exhibit signs commonly seen in individuals with chronic debilitating pain." (R. 17). As a fact finder, an ALJ has an unique opportunity to observe a witness' demeanor. That personal observation is crucial in making credibility determinations. *Van Horn*, supra, at 873.

The Plaintiff's testimony with regards to her ability to care for her three children, cook, perform light house cleaning, mow her lawn and her ability to use her personal computer despite her neck pain is wholly consistent with the ALJ's determination that the Plaintiff is capable of performing substantial gainful activity at the light exertional level. Thus, the ALJ's RFC determination and his rejection of Dr. Cama's opinion are amply supported by substantial evidence on the record. Additionally, the Plaintiff fails to advance a valid argument that would warrant disturbance of the ALJ's credibility findings.

Finally, Plaintiff argues that the ALJ failed to consider her impairments in combination in the hypothetical question posed to the VE. (Doc. 20, p. 13). Specifically, the Plaintiff argues that the ALJ failed to include Dr. Cama's RFC assessment and her own testimony in the hypothetical question posed to the VE. This argument is without merit. As explained above, the ALJ rejected Dr. Cama's RFC determination because it was inconsistent with the objective medical evidence and

with the opinion of agency physicians.

Social Security Ruling 96-7p gives the following instructions in evaluating the credibility of a claimant's statements regarding her symptoms: "In general, the extent to which an individual's statements about symptoms can be relied upon as probative evidence in determining whether the individual is disabled depends on the credibility of the statements. In basic terms, the credibility of an individual's statements about pain or other symptoms and their functional effects is the degree to which the statements can be believed and accepted as true."

An ALJ is required to include in a hypothetical question only those impairments and limitations that have been established to exist based on the medical evidence and an individual's credible testimony. See *Rutherford v. Barnhart*, 399 F.3d 546 (3d Cir. 2005); see also *Chrupcala v. Heckler*, 829 F. 2d 1269, 1276 (3d Cir. 1987). (Doc. 21, p. 17). The ALJ rejected Dr. Cama's RFC assessment and found that the plaintiff's testimony regarding her limitations and subjective pain are not fully credible. Therefore, the ALJ was not required to include any impairment or limitation deriving from those sources.

In light of the evidence of record, as described above, the ALJ's non-disability determination is supported by substantial evidence in the record as a whole.

**V.  Recommendation.**

Based on the foregoing, it is respectfully recommended that Plaintiff's appeal of the Commissioner's decision be DENIED.

> **s/ Thomas M. Blewitt**
> **THOMAS M. BLEWITT**
> **United States Magistrate Judge**

**Dated: August 12, 2005**

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MARY J. CINELLI | : | CIVIL ACTION NO. **1:CV-04-2108** |
| | : | |
| Plaintiff | : | (Judge Conner) |
| | : | |
| v. | : | (Magistrate Judge Blewitt) |
| | : | |
| JOANNE B. BARNHART, | : | |
| Commissioner of | : | |
| Social Security, | : | |
| | : | |
| Defendant | : | |

## **NOTICE**

**NOTICE IS HEREBY GIVEN** that the undersigned has entered the foregoing

**Report and Recommendation** dated **August 12, 2005.**

Any party may obtain a review of the Report and Recommendation pursuant to

Rule 72.3, which provides:

Any party may object to a magistrate judge's proposed findings,
recommendations or report addressing a motion or matter described in
28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the
disposition of a prisoner case or a habeas corpus petition within ten (10)
days after being served with a copy thereof.  Such party shall file
with the clerk of court, and serve on the magistrate judge and all
parties, written objections which shall specifically identify the
portions of the proposed findings, recommendations or report to which

objection is made and the basis for such objections. The briefing requirements set forth in Local Rule 72.2 shall apply. A judge shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record. The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

**s/ Thomas M. Blewitt**
**THOMAS M. BLEWITT**
**United States Magistrate Judge**

**Dated: August 12, 2005**